8 So.2d 618

HODGES et al. v. NORTON et al.

No. 36451.

April 27, 1942.

Rehearing Denied May 25, 1942.

Herold, Cousin & Herold, of Shreveport, for plaintiffs and appellees.

F. L. Hargrove and Wilkinson, Lewis & Wilkinson, all of Shreveport, for defendants and appellants.

McCALEB, Justice.

Plaintiffs, Andrew J. Hodges and others, are the owners of a certain tract of land situated in Sections 11 and 12 of Township 21 North, Range 10 West, Webster Parish, containing approximately 440 acres. Alleging that the defendants, Mrs. Corinne M. Norton and Miss Nelly Norton, are slandering their title to 140 acres of the land by claiming, without right, to own an interest in the oil, gas and other minerals in and under the property, plaintiffs brought this suit to require them either to disclaim the right or to assert it in accordance with law.

The case was thereafter converted into a petitory action by the answer of the defendants wherein they claimed to be the owners of an undivided one-fourth interest in all of the oil, gas and other minerals under the land of the plaintiffs by virtue of a mineral servitude which had been originally established by A. J. Hodges on November 6, 1915, when he bought the property from E. W. Hodges and Mrs. Augusta Ann Hodges, from whom the defendants deraigned their title.

The plaintiffs, while conceding that the defendants' immediate author in title, R. W. Norton, was vested with an undivided one-fourth interest in and to the minerals under a portion of the land situated within the tract, asserted that all of the rights

which were acquired by the defendants have been lost because of the non-use of the servitude for more than ten years. And, specially pleading the prescription of ten years liberandi causa, plaintiffs prayed that the Court adjudge that the rights to the minerals claimed by the defendants have prescribed.

The case was thereafter tried on an agreed statement of facts supplemented by documentary evidence and the District Judge, being of the opinion that plaintiffs' plea of prescription of ten years was well founded in law, sustained the same. He, accordingly, recognized the plaintiffs as owners and possessors of the property involved free from any claims of the defendants and rejected the latters' demand to be declared the owners of an undivided one-fourth mineral interest in the property. Wherefore, this appeal.

The facts of the case, which are not contested, are as follows:

Prior to November 6, 1915, Edmond W. Hodges and Augusta Ann Hodges were the owners of the tract of land, which is situated in Sections 11 and 12 of Township 21 North, Range 10 West, in the Parish of Webster, and contains approximately 440 acres. On that day, Edmond W. Hodges and Augusta Ann Hodges conveyed the tract to Andrew J. Hodges, one of the plaintiffs herein, and reserved to themselves in the deed an undivided one-half interest in the oil, gas and other minerals in and under said land for a restricted period of fifteen years. This reservation is stated in the deed as follows:

" * * * and there is specially reserved, for a period of Fifteen years from

and after this date an undivided one-half interest in and to all oil, gas and mineral rights, in, under and to the above lands, together with the usual and necessary rights of ingress and egress for the purpose of developing said rights."

Edmond W. Hodges died intestate in February, 1920 and was survived by his widow, Mrs. Augusta Ann Hodges, and ten children. On November 26, 1921, the widow and children of Edmond W. Hodges, the then owners of the mineral servitude above quoted, joined with Andrew J. Hodges, the landowner, in the execution of an oil, gas and mineral lease in favor of R. D. Webb covering the entire property.

On October 29, 1923, the widow and children of Edmond W. Hodges sold to J. A. Selby, Jr., an undivided one-fourth mineral interest in the land. This deed to Selby did not indicate that the mineral rights conveyed were restricted to the term of fifteen years stated in the deed of November 6, 1915, wherein the original servitude was created.

Two days later, on October 31, 1923, J. A. Selby, Jr., conveyed to R. W. Norton, through whom the defendants claim, the undivided one-fourth mineral interest which he had acquired from the widow and heirs of Edmond W. Hodges, but only as to 220 acres of the land obtained in the 440-acre tract, and he retained his remaining one-fourth mineral interest in the other 220 acres. The 220 acres, as to which the one-fourth mineral interest was conveyed by Selby to Norton, are located in two separate parts of the original tract, 80 acres

of which being described as the East ½ of SW ¼ of Section 11, and the other 140 acres (involved in this suit) as the E ½ of the SE ¼ of Section 11, and the NW ¼ of the SW ¼ 'and the N ½ of the SW ¼ ' of SW ¼ of Section 12.

The deed from Selby to Norton was with full warranty of title and no mention is made therein of the restricted term of fifteen years contained in the deed of November 6, 1915, under which the original servitude was created.

On November 21, 1923, Andrew J. Hodges, the landowner, executed in favor of Selby a release of his "reversionary" rights with respect to the undivided one-fourth interest in the minerals in the entire tract purchased by Selby from the widow and heirs of Edmond W. Hodges on October 29, 1923.

On the next day, November 22, 1923, Selby reconveyed to A. J. Hodges, the landowner, the "reversionary" rights, which he had acquired from Hodges on the day previous, insofar as those rights affected that part of the tract of land which was not described in the deed wherein Selby conveyed an undivided one-fourth mineral interest to Norton. Thus, Selby, by this conveyance, released Hodges from the release which Hodges had given him the day before insofar as it affected his (Selby's) interest in the original mineral servitude.

It does not appear from the record that, prior to the time when all of the foregoing interchanges of mineral rights took place, the servitude originally established by A. J. Hodges had been used by any of the owners of the mineral interests.

Subsequently, however, several wells were drilled under the lease dated November 26, 1921, which had been granted by the widow and heirs of E. W. Hodges and A. J. Hodges to R. D. Webb. These explorations were made in 1924 as follows:

(a) Humble Oil & Refining Company drilled a dry hole in the Northeast corner of the NW ¼ of the SW ¼ of Section 12.

(b) Humble Oil & Refining Company drilled two wells in the SW ¼ of the SE ¼ of Section 11. These wells were completed as producing oil wells and were operated continuously from the time of their completion in the year 1924 until some time in June, 1931.

(c) Invincible Oil Company drilled two wells in the SW ¼ of the SW ¼ of Section 11. These wells were completed as producing oil wells and were operated continuously from the time of their completion in the year 1924 until some time in the year 1927.

(d) Gulf Refining Company drilled two wells in the SW ¼ of the SW ¼ of Section 11. These wells were completed as producing oil wells and were operated continuously from the time of their completion in 1924 until December 27th, 1927.

On June 1, 1938, the plaintiffs executed an oil and gas lease in favor of H. L. Hunt, Jr., covering the East ½ of the SE ¼ of Section 11.

On April 6, 1939, defendants executed a co-lessors' agreement ratifying the above referred to lease. (The property covered by this lease is situated in that part of the tract upon which the defendants claim an undivided one-fourth mineral interest.)

Under this lease and co-lessors' agreement, Hunt drilled and completed a producing well on April 10, 1939, which said well is still producing oil in large quantities.

It clearly appears from the foregoing statement of facts that the defendants, as successors in title to R. W. Norton, acquired an undivided one-fourth mineral interest in the land covered by the servitude originally established by A. J. Hodges in favor of E. W. Hodges and his wife limited, however, to the right to benefit by the exploration for minerals in 220 acres of the 440-acre tract. Hence, the all-important and main question in the case is whether the defendants' mineral interest has prescribed by non-use of the servitude for more than ten years.

The defendants concede that, were it not for the fact that A. J. Hodges released for a consideration the benefit of the term stipulation contained in the deed of November 6th, 1915, when the mineral servitude was established, the plea of prescription would be well founded. They, however, claim that the conveyance by A. J. Hodges to Selby on November 21, 1923, of his "reversionary" rights to the undivided one-fourth mineral interest (which Selby had acquired from the widow and heirs of E. W. Hodges) inured to the benefit of Norton, their predecessor in title, since Selby had previously sold his one-fourth interest to Norton as to 220 acres of the tract under a warranty deed, and that this conveyance by A. J. Hodges had the effect of vesting in Norton the servitude unrestricted as to time but subject, however, to the prescription provided by law. In other words, the defendants assert that there was only one servitude established on the property—that is, the servitude granted by Hodges in 1915, which was restricted by the contractual limitation of fifteen years; that the conveyance by Hodges to Selby of his "reversionary" rights did not create a new servitude but merely released the fifteen-year restriction which had been placed on the servitude so that, insofar as Selby and Norton's interests were concerned, it was unlimited and was, therefore, governed only by the prescription established by law. From this premise, it is argued that, since there were two producing wells drilled in the SW ¼ of the SE ¼ of Section 11 by the Humble Oil & Refining Company in 1924, the running of prescription was interrupted at that time and remained interrupted until June, 1931, when those wells were abandoned. Hence, it is said that prescription has obviously never accrued because ten years have not elapsed from that date to 1939 when Hunt brought in the producing well situated on the 140 acres of land involved in this litigation.

Plaintiffs, on the other hand, while conceding that the original servitude granted in favor of E. W. Hodges and his wife in 1915 was indivisible, contend that, inasmuch as the servitude was restricted to a period of fifteen years, it expired as to all persons holding a mineral interest under E. W. Hodges and wife on November 6, 1930, and that nothing happened in the meantime which had the effect of extending the limitation fixed in the grant by A. J. Hodges. With respect to the defendants' claim that the term of the servitude was ex-

tended by Hodges' conveyance of his "reversionary" rights to Selby on November 21, 1923, plaintiffs maintain that this act of Hodges was tantamount to the creation of a new, separate and distinct servitude in favor of Norton, limited, however, to the undivided one-fourth mineral interest of Norton in and to the specific 220 acres which he had acquired from Selby, and that it becomes manifest, when consideration is given to the act executed by Selby on November 22, 1923, by which he retransferred Hodges' "reversionary" rights excepting the mineral interest in the 220 acres which Selby had sold to Norton, that the parties intended to establish such new servitude in favor of Norton.

From this premise, plaintiffs argue that the prescription of ten years commenced to run as against Norton on November 21, 1923, when Norton obtained the alleged new servitude from Hodges by virtue of the latter's release of his "reversionary" rights to Selby; that prescription could have been interrupted only by the drilling of oil wells on the 220 acres covered by the new servitude and that, since, admittedly, the only oil well drilled on the tract of 140 acres here involved was abandoned in 1924, prescription accrued in 1934, or five years before the well was drilled by H. L. Hunt, Jr., in 1939. Stated in another way, the contention is that the drilling of the wells in 1924 by the Humble Oil Company in the SW ¼ of the SE ¼ of Section 11, which said wells produced until 1931, could not have interrupted the running of prescription with respect to the new servitude granted to Norton because those wells were, admittedly, not upon the property covered by that servitude.

Plaintiffs further maintain that, if the sale by Hodges to Selby of the former's "reversionary" rights in and to the mineral interest be considered as a sale of a right that came into existence on November 6, 1930, then it must be held invalid since it is to be regarded as an attempt by the parties to renounce in advance an unacquired prescription which is prohibited by Article 3460 of the Civil Code.

■ In order to solve the question presented in the case, it is apt to review briefly the various transactions which gave rise to the controversy. There was originally established on the entire tract comprising 440 acres a servitude in favor of E. W. Hodges and his wife for an undivided one-half of the minerals in and under the land. The duration of this servitude was limited by express stipulation to a term of fifteen years or until November 6, 1930. Notwithstanding this contractual limitation, the prescription of ten years liberandi causa was nonetheless applicable and the parties admit that, in the event use had not been made of the servitude before November 6, 1925, prescription would have accrued. Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389.

■ The land upon which the servitude was established is one continuous tract. There was but one indivisible servitude and the mere fact that the mineral owners conveyed undivided interests in the right to others did not have the effect of dividing it. See Lee v. Giauque, 154 La. 491, 97

So. 669; Patton v. Frost Lumber Industries, Inc., 176 La. 916, 147 So. 33; Connell v. Muslow Oil Co., 186 La. 491, 172 So. 763, and Ohio Oil Company v. Cox, 196 La. 193, 198 So. 902. The reason for this is that a servitude can only be created by the owner of the land. Therefore, when the widow and children of E. W. Hodges conveyed an undivided one-fourth interest in the minerals to Selby, the servitude covering the entire land remained intact. Likewise, when Selby conveyed to Norton a one-fourth interest in the minerals in and under 220 acres of the tract, the servitude was not divided and exercise of the servitude on any portion of the land preserved it as to the whole.

However, it is to be borne in mind that the servitude in the instant case was limited in its duration to fifteen years and that, even though the course of prescription was interrupted by its use prior to November 6, 1925, the mineral rights of the widow and heirs of E. W. Hodges and of Selby unquestionably expired on November 6, 1930. It is admitted by the defendants that the mineral rights acquired by Norton from Selby would have likewise expired on that day, notwithstanding the fact that no mention was made of the fifteen-year limitation to which the servitude was subjected in the conveyance to Norton. But defendants contend that the release by A. J. Hodges to Selby on November 21, 1923, of the former's "reversionary" rights with respect to the one fourth interest in the minerals purchased by Selby had the effect of immediately vesting in Norton, Selby's vendee, the benefit of this release since Selby had conveyed to Norton under a

warranty deed. The doctrine invoked by defendants is well recognized in this State. See St. Landry Oil & Gas Co., Inc., v. Neal et al., 166 La. 799, 118 So. 24, 25, and Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633.

In the first of the cited cases [166. La. 799, 118 So. 25], this Court said:

"Ordinarily, where one sells the property of another—and the rule is equally applicable to the granting or sale of mineral leases —and later acquires title to the property sold by him, the title vests immediately in his vendee." (Citing a long list of cases supporting this general rule.)

■ Hence, when A. J. Hodges released to Selby his so-called "reversionary" interest in the minerals, Norton, Selby's vendee, became vested with whatever rights were transferred by that instrument. What were these rights?

The deed from A. J. Hodges to Selby, dated November 21, 1923, sets forth that the former had, on November 6th, 1915, purchased from E. W. Hodges and Mrs. Augusta Ann Hodges the 440-acre tract of land (which is described in full). Then it recites that:

"Whereas, in said instrument there was reserved to the vendors an undivided one-half (1/2) interest in and to all the oil, gas and other minerals underlying said property for a period of fifteen years from and after the date of said deed; and,

"Whereas, J. A. Selby, Jr., a single man, has purchased from Mrs. Augusta Ann Hodges and the heirs of E. W. Hodges an undivided one-fourth (1/4) interest in and

to the minerals underlying and that may be produced from the above described property;

"*Now, therefore, in order to vest in the said J. A. Selby, Jr., completely and without limitation an undivided one-fourth (1/4) interest in and to the minerals underlying the property described,* he does by these presents grant, bargain, sell, convey and deliver unto the said J. A. Selby, Jr., with subrogation of all rights of warranty against former proprietors, his entire reversionary right in and to the one-fourth (1/4) interest in the minerals described herein as having been purchased by J. A. Selby, Jr., from Mrs. Augusta Ann Hodges and the heirs of E. W. Hodges, *and further acknowledges that J. A. Selby, Jr., is the owner of such interest, completely and without limitation as to term.*" ·(Italics ours)

A mere reading of the foregoing clearly exhibits that, while it is stated that Hodges' "entire reversionary right" is conveyed, the intention of the parties was to vest in Selby "completely and without limitation an undivided one-fourth (1/4) interest in and to the minerals underlying the property described," and further an acknowledgement that Selby "is the owner of such interest, completely and without limitation as to term." What is the effect of this transfer? Does it create a new servitude as contended for by the plaintiffs, or does the original servitude established by Hodges remain intact as asserted by the defendants?

■ A careful study of the matter has convinced us that the contention of the

defendants must prevail. There was never created more than one servitude which was restricted in its duration to a term of fifteen years. The act of Hodges in releasing the restriction with respect to Selby's interest (which inured to Norton's benefit) did not and cannot be interpreted to mean that he created any new mineral right but merely that he deleted from the original contract, insofar as Selby and Norton are concerned, the contractual limitation and made the servitude applicable only to the prescription provided by law. The legal situation here presented may be illustrated by the following example:

Suppose A grants to B a servitude limited in duration for a period of five years and, before the expiration of the five years, A releases the contractual limitation. In such instance, A does not create a new servitude. On the contrary, he merely continues the same servitude in effect for an additional period of time and makes it subject to the prescription provided by law. Under the circumstances, prescription would start to run, not from the date upon which A released the contractual limitation, but from the date upon which the servitude was granted.

Thus, in the instant case, when A. J. Hodges released in favor of Selby the fifteen-year contractual limitation, his waiver, which inured to the benefit of Norton, had the effect of continuing the life of the servitude for an indefinite period—subject, however, to the prescription established by law. Prescription had already commenced to run on November 6, 1915, the date upon which the servitude was created. How-

ever, its course was interrupted, prior to November 6, 1925, by the drilling in 1924 of the oil wells by the Humble Oil Company on the SW ¼ of the SE ¼ of the tract and remained interrupted until 1931 when those wells were abandoned. Hence, when, in 1939, Hunt completed a producing well on the part of the land in which the defendants have an interest, the prescription of ten years had not yet accrued.

Counsel for the plaintiffs, in stressing their contention that the release by A. J. Hodges to Selby created a new servitude, point to the retransfer by Selby to Hodges on November 22, 1923, and they say that that conveyance furnishes indisputable evidence of the intention of the parties to establish in Norton's favor a servitude, separate and distinct from the original servitude, limited to Norton's undivided one-fourth mineral interest in and to the 220 acres of land.

The difficulty we find with this argument is twofold. In the first place, Norton was not a party to the act in which Selby retransferred the "reversionary" rights to A. J. Hodges and he cannot be bound thereby. Moreover, if it was the intention of Hodges to create a new servitude affecting only the 220 acres in which Norton had an interest, there was no reason for him to release the fifteen-year limitation as to the entire tract. He could have easily avoided the situation in which plaintiffs now find themselves in this case by releasing directly to Norton the contractual limitation contained in the original grant and by stipulating in such release that the drilling on any other portion of the land, except that part in which Norton had an interest, would not be considered as a preservation of his, Norton's rights.

Counsel for the plaintiffs rely strongly on two cases which they say are authority for the proposition that a new servitude was created by Hodges' conveyance of his "reversionary" rights to Selby and Selby's reconveyance to him. Those cases are Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 So. 253, and Spears v. Trinity Royalty Co., 197 La. 931, 2 So.2d 650.

The first cited case is without application because the point there involved referred to the abandonment of a joint oil lease and had nothing whatever to do with mineral servitudes.

In sustaining the plaintiffs' plea of prescription, the Judge of the lower Court rested his decision on the case of Spears v. Trinity Royalty Co., supra, which he believed to be indistinguishable from the case at bar. We, however, see a vast difference between the two cases and have been unable to find any expression in the Trinity Royalty Co. case which lends support to the contention of plaintiffs' counsel that A. J. Hodges created a new servitude in 1923 when he released the mineral interest of Selby from the fifteen-year contractual limitation.

In the Trinity Royalty Company case, the landowner had granted a mineral servitude on his property in favor of the defendant. Later, on August 25, 1933, the landowner and the owners of the mineral interest joined together in the execution

of two separate leases commonly known as "unitized" or "integrated" lease contracts, which covered, not only the land upon which the servitude had been established, but other land within that vicinity. One of these leases covered the property located in the western half of the tract and the other affected that located in the eastern half. Drilling operations were conducted by the mineral lessee on the western half of the property, but not upon any of the property affected by the servitude established in favor of the Trinity Royalty Company. We held that, under these circumstances, the drilling of the well by the mineral lessee on the property blocked under the lease contract affecting the western half of the property did not interrupt the running of prescription with respect to that part of the land covered by the lease affecting the eastern half of the property. We did not say that, if the well had been drilled on part of the land subjected to the servitude, prescription would not have been interrupted as to the whole. That question was not before us. What we decided was that, where there is one servitude and the landowner and the mineral owner enter into two separate mineral leases dividing the land affected by the servitude into two distinct parcels and blocking or unitizing each parcel with contiguous property not subject to the servitude, the drilling of an oil well on property covered by one of the mineral leases but not subjected to the servitude does not have the effect of interrupting the running of prescription with respect to the property affected by the pooling arrangement under the other lease.

Of course, the Court recognized the principle that the landowner and the mineral owner can, by contract, extinguish an existing servitude and thereafter enter into a new arrangement whereby two or more servitudes on the same property are established.

However, in the instant case, there was not any agreement between Hodges and Norton with respect to the servitude which had been established by Hodges in 1915. The servitude, as originally created, remained at all times intact. The only thing which happened that had the effect of changing the situation was that A. J. Hodges waived or released the contractual limitation contained in the act of November 6, 1915, which release inured to Norton's benefit.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiffs' plea of prescription be and it is overruled and that there be judgment herein rejecting plaintiffs' demands and decreeing that the defendants, Mrs. Corinne M. Norton and Miss Nelly Norton, are the owners of an undivided one-fourth interest in the oil, gas and other minerals in and under and that may be produced from the East one-half of the Southeast one-quarter of Section 11 and the Northwest one-quarter of the Southwest one-quarter and the North one-half of the Southwest one-quarter of the Southwest one-quarter of Section 12, all in Township 21 North, Range 10 West, Webster Parish, Louisiana. Plaintiffs are further ordered to pay all costs of Court.

O'NIELL, C. J., is of the opinion that the judgment of the district court should be affirmed on the ground especially that the ten years prescription against the so-called reversionary interest which Andrew J. Hodges transferred or "released" to Selby on November 21, 1923, commenced on that date, and not on November 6, 1930, the date on which the interest would have reverted to Hodges if he had not transferred or "released" it to Selby.