**UNITED STATES of America,**
**Plaintiff,**

v.

**The LEITER MINERALS, INC., et al.,**
**Defendants.**

**Civ. A. No. 4379–B.**

United States District Court
E. D. Louisiana,
New Orleans Division.
April 11, 1962.

Kathleen Ruddell, U. S. Atty., M. Hepburn Many, Sp. Asst. to U. S. Atty., for plaintiff.

Milling, Saal, Saunders, Benson & Woodward, Charles D. Marshall, Eugene D. Saunders, New Orleans, La., for defendants, California Co., Allen L. Lobrano, and Mrs. Ethel M. Fontenelle Lobrano, Individually and as Natural Tutrix of Minors, Robert Leo Lobrano and Karen Katherine Lobrano.

Plauche & Plauche, S. W. Plauche, Jr., Lake Charles, La., Tucker, Bronson & Martin, John H. Tucker, Jr., Horace M. Holder, Shreveport, La., for defendant, Leiter Minerals, Inc.

J. SKELLY WRIGHT, District Judge.

This case has a tortuous history. It begins in a Louisiana state court almost nine years ago, when the Leiter Company, successor to the interests of the Leiter family, former owners of substantial acreage in Plaquemines Parish, Louisiana, who in 1938 had sold their lands to the Government for a wildlife refuge with a reservation of the minerals, filed suit[1] against one of the mineral lessees of the United States, Allen

1. Leiter Minerals, Inc. v. The California Company and Allen L. Lobrano, 25th Judicial District Court for the Parish of Plaquemines, Louisiana, No. 3282, filed August 13, 1953.

Lobrano,[2] and the operator under that lease, the California Company. Though, by its own terms, the mineral reservation had long expired when the Government granted its lease in 1949, the Leiter Company invoked a 1940 Louisiana statute[3] which, they said, preserved their mineral ownership indefinitely. The question had become important because of the discovery of very valuable oil deposits under the lands in 1950.

There was an effort to remove that initial proceeding here, but, no federal question appearing, this court remanded.[4] Thereupon, the United States instituted the present suit to quiet its title to the minerals. The Government obtained an injunction against the concurrent state proceedings.[5] That action was affirmed by the Court of Appeals,[6] and ultimately by the Supreme Court.[7] But, in view of the obvious constitutional questions raised if the Louisiana statute were held retroactively applicable to the contract of sale, the Supreme Court indicated the propriety of obtaining from the state courts an authoritative interpretation of Act 315 of 1940.[8] Accordingly, the Leiter Company filed a declaratory judgment proceeding in the Louisiana District Court.[9] Despite the restricted petition, drawn by this court, the state trial judge adjudicated the whole case, awarding the minerals to Leiter.[10] He was reversed by

2. For reasons unexplained, the heirs of the other lessee of the United States, Frank J. Lobrano, were not joined as defendants in that initial suit. In all subsequent proceedings, however, they have been made parties.

3. La.Act 315 of 1940, now LSA–R.S. 9:5806, quoted in pertinent part, infra, Note 23.

4. The Leiter Minerals, Inc. v. The California Company, et al., E.D.La., Civil Action No. 4090. In remanding, this court noted: "A federal question may be 'lurking in the background' in this case, but its presence is not sufficiently disclosed by plaintiff's petition; nor is the question, if present, a substantial one." But the only basis asserted for the removal was an allegation that the case "involved the interpretation and application of" the Migratory Bird Conservation Act, 16 U.S.C.A. § 715 et seq., and the Mineral Leasing Act for Acquired Lands, 30 U.S.C.A. § 351 et seq., which, under the Supremacy Clause, superseded state law. The constitutional issues outlined later in this opinion were not then before the court.

5. United States v. Leiter Minerals, E.D.La., 127 F.Supp. 439.

6. Leiter Minerals v. United States, 5 Cir., 224 F.2d 381.

7. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267.

8. Id., 229, 77 S.Ct. 292: "The Government contends that Act No. 315 of 1940 does not apply when the parties themselves have contracted for a reservation of specific duration and that if the statute is construed to apply to this situation, it would impair the obligation of the Government's contract. Petitioner disagrees. The Supreme Court of Louisiana has never considered the specific issue or even discussed generally the rationale of the statute, especially with reference to problems of constitutionality. The District Court recognized the importance of the statute in deciding this case; it also recognized that a problem of interpretation was involved, that the statute cannot be read by him who runs. What are the situations to which the statute is applicable? Is the statute merely declaratory of prior Louisiana law? What are the problems that it was designed to meet? The answers to these questions are, or may be, relevant. Before attempting to answer them and to decide their relation to the issues in the case, we think it advisable to have an interpretation, if possible, of the state statute by the only court that can interpret the statute with finality, the Louisiana Supreme Court."

9. The first petition filed in effect asked the state court to adjudicate the whole case. The Leiter Minerals, Inc. v. The California Company, et al., 25th Judicial District Court for the Parish of Plaquemines, No. 4240, filed April 25, 1957. Since it therefore violated the outstanding injunction issued by this court and the abstention order of the Supreme Court, it was removed here and stayed. The Leiter Minerals, Inc. v. The California Company et al., E.D.La., Civil Action No. 6708. The parties being unable to agree on a form of declaratory petition, the court ultimately drew the petition to be filed in the state court.

10. The Leiter Minerals, Inc. v. The California Company, et al., 25th Judicial District Court for the Parish of Plaquemines, No. 4557. While the opinion of the Dis-

the Louisiana Court of Appeal,[11] but again the decree went too far. Finally, the Louisiana Supreme Court took the case and rendered a declaratory judgment in proper form.[12] The case here now proceeds with helpful guidance from the opinion of the highest state court.

That opinion, however, does not,[13] as it could not,[14] resolve serious doubts concerning the constitutionality of the Louisiana Act. There is not only the obvious bar of the Contract Clause to any impairment of the obligation of contracts.[15] U.S.Const., Art. 1, § 10, cl. 1. Also implicit in any application of the statute here are questions under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. If Act 315 is held to work a forfeiture of substantial mineral rights owned by the United States, is this deprivation of property reasonably necessary in the service of a legitimate governmental ob-

jective? And, in any event, does this discrimination directed against the federal government and its lessees result from a reasonable classification? The last question has a sharper edge when we learn that Louisiana once dealt itself the same treatment as it now reserves for the United States alone.[16] But, fortunately, these and other federal issues can be avoided if Act 315 of 1940 is inapplicable in the premises. And that is the conclusion to which we are led when we attempt to superimpose the statute, elucidated as it has been by the Louisiana Supreme Court, on the present facts, as they appear.

We begin with one certainty. The mineral reservation in the deed of sale from Thomas Leiter to the United States in December, 1938, created a mineral servitude in favor of the seller. Such a servitude is, according to the Louisiana Supreme Court, "a right to go upon

---

trict Judge is not reported, it is reproduced in the dissenting opinion of Justice Hamlin of the Louisiana Supreme Court. See Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845, 856 ff.

11. Leiter Minerals, Inc. v. California Company, La.App., 126 So.2d 76. Initially, the appeal had been taken to the Louisiana Supreme Court, but, finding itself without jurisdiction, that court transferred the appeal to the Louisiana Court of Appeal for the Fourth Circuit. Leiter Minerals, Inc. v. California Company, 239 La. 116, 118 So.2d 124.

12. Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845.

13. The views expressed in the Louisiana Supreme Court decision relating to the "constitutionality" of the statute clearly intend to adjudicate its validity under the Louisiana Constitution only. While the Louisiana provisions may be similar to those of the United States Constitution, it does not follow that the state court's ruling prejudices the federal constitutional claims. See Note 14, infra.

14. The Supreme Court in this case cautioned: "It need hardly be added that the state courts in such a proceeding can decide definitively only questions of state law that are not subject to overriding federal law." Leiter Minerals, Inc. v. United States, 352 U.S. 220, 229–230, 77 S. Ct. 287, 1 L.Ed.2d 267.

15. The ruling in United States v. Nebo Oil Co., 5 Cir., 190 F.2d 1003, affirming, W. D.La., 90 F.Supp. 73, does not dispose of this question. The court there held that the "hope" of the Government, as landowner, for a return of the minerals, based solely on the Louisiana law of prescription, was not a contract right impaired by the passage of Act 315 of 1940. But, query, whether a similar expectation, based on a contractual stipulation (whether called a "term" or a "contractual period of prescription") can be abrogated by a subsequent law without offending the Contract Clause.

On the other hand, it may be that the Contract Clause question is eliminated because, at the time the deed was executed, the seller could have had no such expectation in view of Act 151 of 1938 which already rendered imprescriptible mineral reservations in sales to the United States. La.Act 151 of 1938, repealed by La.Act 315 of 1940. Yet, it is arguable that the Leiters were then merely performing an inescapable duty to execute a deed, all the terms of which had been settled in 1935, in which case the 1938 Act might itself be viewed as working an impairment of the obligation of contracts.

16. Act 151 of 1938, Note 15, supra, rendered imprescriptible mineral reservations in sales to both the United States and the State of Louisiana. See also, La.Act 68 of 1938, repealed by Act 315 of 1940.

the land and produce the minerals." Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845, 850, 852, 854. Like most servitudes, a mineral servitude is usually established for an indefinite duration.[17] In the absence of a stipulated term, it will normally endure until the minerals are exhausted, unless the holder fails to exercise his servitude and allows it to prescribe. LSA–C.C. art. 783(2). As a matter of law, the right of servitude prescribes ten years from the day it ceases to be used, LSA–C.C. arts. 789, 790, 3546, though the parties may contractually shorten that period. Leiter Minerals, Inc. v. California Co., supra, 853.[18] To avoid this prescription for non-usage, however, the servitude holder need not actually remove minerals from the land. Much less is it necessary that there be production of oil or gas in paying quantities, or for stated periods. The servitude is preserved, for the whole tract,[19] by mere bona fide drilling. Keebler v. Seubert, 167 La. 901, 120 So. 591. And even the drilling of one dry hole will save the servitude for a full ten year period of inactivity. Lynn v. Harrington, 193 La. 877, 192 So. 517; Hunter Co. v. Ulrich, 200 La. 536, 8 So.2d 531; McMurrey v. Gray, 216 La. 904, 45 So.2d 73; Harrison v. Grandison Co., E.D.La., 51 F.Supp. 768.

But, like other conventional servitudes, mineral servitudes may also be created for only limited periods. LSA–C.C. arts. 783(6), 821.[20] The term of such servitudes may be fixed by reference to a date, the expiration of a stated number of years,[21] the occurrence of an event, or any combination of these methods. LSA–C.C. art. 821. The stipulation of a term, it is true, does not avoid the rule of prescription for non-use. Hodges v. Norton, 200 La. 614, 8 So.2d 618. But its normal effect is to shorten the duration of the mineral servitude and establish a predictable termination date. The servitude ends at the time specified, although it is then actively exercised, or has not been abandoned for a period sufficient to accrue prescription. Leiter Minerals, Inc. v. California Co., supra, 241 La. 915, 132 So.2d 852.

In short, with respect to duration, there are two kinds of mineral servitudes: perpetual servitudes which prescription[22] alone will curtail, and servitudes for a term which end at the expiration of the time stipulated. In which category does the Leiter servitude fall? The question is crucial, for the Louisiana Supreme Court has held that Act 315 of 1940[23] removes the prescriptive bar to

17. "Most mineral servitudes are not established for a fixed time." Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So. 2d 845, 853. See also, Nabors, The Louisiana Mineral Servitude and Royalty Doctrines: A Report to the Mineral Law Committee of the Louisiana State Law Institute, in 25 Tulane L.Rev. 30, 53.

18. They cannot, however, lengthen the legal period of prescription. Leiter Minerals, Inc. v. California Co., supra, 853–854.

19. Assuming the servitude applies to a single tract, as here. When there are non-contiguous areas, each must be used to preserve the servitude. Lee v. Giauque, 154 La. 491, 97 So. 669.

20. The rule is re-affirmed by the Louisiana Supreme Court in this case. Leiter Minerals, Inc. v. California Co., supra, 241 La. 915, 132 So.2d 852.

21. Hodges v. Norton, 200 La. 614, 8 So. 2d 618, furnishes an example of this type of servitude for a flat term. As the Louisiana Supreme Court noted (though, strictly speaking, it was not an issue there), the duration stipulation in Hodges is unlike that in the present case, because here we cannot "concentrate on a single date" (as the Louisiana Court of Appeal apparently sought to do). Leiter Minerals, Inc. v. California Co., supra, 241 La. 915, 132 So.2d 850, 852. But that does not resolve the question whether the provisions here announce a term of a different kind, or a "contractual period of prescription."

22. Legal or conventional.

23. In pertinent part, the Act reads as follows:

"Be it enacted by the Legislature of Louisiana, That when land is acquired

perpetual servitudes, but does not affect the duration of servitudes for a term:[24]

"To summarize in conclusion, it is our view, and we hold: First, that if the reservation in the Leiter deed is construed as establishing a mineral servitude for a definite, fixed, and specified time which has elapsed, then Act 315 of 1940 is not applicable and cannot be constitutionally applied; and second, that if the reservation is construed as not establishing a servitude for a fixed, definite and certain time, and if it is decided that the provisions of the reservation show that the parties were stipulating for a period of contractual prescription for the conditional extinguishment of the mineral servitude created, then Act 315 of 1940 is applicable and constitutional." Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So. 2d 845, 854–855.

The reservation in question reads:

"The Vendor reserves from this sale the right to mine and remove, or to grant to others the right to mine and remove, all oil, gas and other valuable minerals which may be deposited in or under said lands, and to remove any oil, gas or other valuable minerals from the premises; the right to enter upon said lands at any time for the purpose of mining and removing said oil, gas and minerals, said right, subject to the conditions hereinafter set forth, to expire April 1, 1945, it being understood, however, that the vendors will pay to the United States of America, 5% of the gross proceeds received

by them as royalties or otherwise from all oil or minerals so removed from in or under the aforedescribed lands, until such time as the vendors shall have paid to the United States of America, the sum of $25,000, being the purchase price paid by said United States of America for the aforedescribed properties.

"Provided, that if at the termination of the ten (10) year period of reservation, it is found that such minerals, oil and gas are being operated and have been operated for an average of at least 50 days per year during the preceding three (3) year period to commercial advantage, then, and in that event, the said right to mine shall be extended for a further period of five (5) years, but that the right so extended shall be limited to an area of twenty-five acres of land around each well or mine producing, and each well or mine being drilled or developed at time of first extension, to-wit: April 1, 1945.

"Provided, that this said right to mine as previously stated shall be further extended from time to time for periods of five (5) years whenever operation during the preceding five (5) year period has been for an average of 50 days per year during this period, and

"Provided that at the termination of the ten (10) year period of reservation, if not extended, or at the termination of any extended period in case the operation has not been carried on for the number of days stated, the right to mine shall ter-

by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm or corporation, and by the act of acquisition, verdict or judgment, oil, gas, and/or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas and/or other minerals or royalties, still in force and effect, said rights so re-

served or previously sold shall be imprescriptible."

24. The language of the statute clearly supports this conclusion. It is said that the rights "shall be *imprescriptible*," supra, Note 23, not that all mineral rights in such sales shall be "perpetual." However, there is no occasion for this court to interpret the Act. That was the task of the Louisiana Supreme Court, and this court merely applies its interpretation

minate, and complete fee in the land become vested in the United States.

"The reservation of the oil and mineral rights herein made for the original period of ten (10) years and for any extended period or periods in accordance with the above provisions shall not be affected by any subsequent conveyance of all or any of the aforementioned properties by the United States of America, but said mineral rights shall, subject to the conditions above set forth, remain vested in the vendors."

There is nothing difficult about the interpretation of this provision.[25] It very clearly establishes a mineral servitude for a term of ten years,[26] subject to partial renewal for additional five year terms in the event of actual production in paying quantities for specified periods. Obviously, the duration of the reservation is not governed by the usual laws of prescription. The only remaining question is whether the parties were contracting for "a period of contractual prescription."

At the outset, we note that, unlike Nebo, supra,[27] the word "prescription" is never mentioned in the contract. The ten and five year spans involved are referred to as "periods of reservation," unaffected by the stopping and starting of the running of prescription by use and non-use. But this is not all. There are other essential differences between the effect of these provisions and the rules of liberative prescription. These may be summarized:

First, under the present contract, *a large area will be released* from the servitude after the expiration of ten years *regardless of use or production,* for only 25 acres around each well are saved in any event.

Second, no use of the servitude short of *actual production in paying quantities for at least fifty days a year for three years* will preserve any part of the servitude beyond the primary term.

Third, only production in the *last three years* of the primary term will renew the servitude.

Fourth, even the requisite production at the right time will renew the servitude for *only five additional years.*

These are not the characteristics of legal prescription, nor of any known con-

25. While the controlling principles of Louisiana mineral law are taken from the opinion of the state court, this court must interpret the contract for itself. Whatever hints the parties think they read in the Louisiana Supreme Court's decision, no intention to construe the reservation in suit can properly be ascribed to that court. Indeed, the judges of the Louisiana court said so expressly: "We are mindful, however, that the interpretation of this reservation is for the United States courts, and not for us in this proceeding;" and, again, "As we have pointed out, we ourselves cannot construe the reservation in this proceeding;" "The interpretation of the contract is for the United States courts." Leiter Minerals, Inc. v. California Co., supra, 241 La. 915, 132 So.2d 850, 852, 855.

26. It will be noted that while the reservation refers to a primary term of ten years, it also sets April 1, 1945, as the termination date of the servitude, though the sale was consummated December 21, 1938. The explanation is that the reservation in the deed was copied from a contract to sell executed by the parties in March, 1935, and that the formal sale was then expected to occur on April 1, 1935. Obviously, an adjustment should have been made in the act of sale, either by changing the date mentioned to "December 21, 1948," or by correcting the "ten (10) year period" provision. It is difficult to know which was intended. For the purpose of the opinion, however, the court accepts the defendant's contention that the primary term of the reservation was to be ten years from December 21, 1938. Since the renewal conditions had not then been met, it makes no real difference which interpretation is accepted.

27. No one here pretends that the contract in suit is similar to the one in Nebo. The deed construed in that case conveyed the minerals "forever," "absolutely and without limit for time," and expressly adverted to prescription as the only obstacle to perpetual duration of the servitude. United States v. Nebo Oil Co., supra, 190 F.2d 1005.

tractual variant. "Contractual prescription" is, at best, an odd notion. But if the Louisiana Supreme Court has indicated that the *period* of prescription may be varied by contract,[28] neither here nor elsewhere has that court (or any other Louisiana court) suggested that all the modalities of the law of prescription can be changed conventionally. Doubtless, the result is permissible,[29] but only by the baldest perversion of the term could it be said that a contract so ordered is governed by "prescription." Clearly, the present stipulation sets a *term* for the reservation, which has nothing whatever to do with prescription, contractual or otherwise.

Should any doubt remain, the final proof that no prescriptive period is here involved lies in a very practical difference. The Louisiana Supreme Court itself has told us that an "uncertain and indefinite duration" is the hallmark of prescription. Leiter Minerals, Inc. v. California Co., supra, 241 La. 915, 132 So.2d 853. Here the hallmark is missing.

Unlike the uncertain life of a servitude subjected to the regime of prescription, the accrual of which may be interrupted and resumed at any time, the duration of the present right was definitely staked out in the reservation. As already noted, from the first it was known that an important area would be released from the servitude in ten years.[30] Nor was the fate of the remaining acreage left in doubt. Indeed, the contract itself fixed the termination date. True, that date, depending on circumstances, might be ten, fifteen, or twenty years from the execution of the deed. But, at least, it was always clear that the right would end on one of these alternate dates, and at no other time. Moreover, if the parties did not know at the outset which of those possible dates would mark the demise of the servitude, they were enlightened much sooner than would be the case under the rule of prescription. Thus, under the actual facts of this case, before the end of the seventh year it was clear that, regardless of what later happened, the entire servitude would fall on December 21, 1948.[31]

The conclusion is plain that the parties did not intend,[32] and did not, establish a servitude for "an uncertain and indefinite duration," subject to "a period of contractual prescription." Their contract rejects the concept of prescription and provides a definite term for the exercise of rights under the servitude, subject to renewal on a limited basis, but again for a definite term. Under the ruling of the Louisiana Supreme Court, it follows that the reservation was not affected by Act 315 of 1940. Accordingly, the servitude expired by its own terms and the mineral rights reverted to the United States.

Plaintiff's motion for summary judgment granted. Defendant's motion for summary judgment denied.

28. Leiter Minerals, Inc. v. California Co., supra, 241 La. 915, 132 So.2d 853.

29. There is here no question of freedom to contract. The only issue is whether an admittedly valid stipulation establishes a "term" or a "period of contractual prescription."

30. Since the renewal provisions, when applicable, operate only for an area of 25 acres around each producing well, the remaining acreage would, under any circumstances, be freed from the servitude at the expiration of the primary ten year term.

31. The court here accepts defendant's contention that the date April 1, 1935, was inadvertently retained. See Note 26, supra.

32. The intent to create only a limited servitude is consistent with the Government's plan to devote the lands to a bird sanctuary, which extended and indefinitely prolonged oil operations might well disrupt.