STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1495


ST. MARY OPERATING COMPANY

VERSUS

MATTHEW JOEL GUIDRY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 81,814
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**
**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**


**Charles R. Sonnier**
**Attorney at Law**
**P. O. Drawer 700**
**Abbeville, LA 70511-0700**
**Counsel for Defendants/Appellants:**
    **The Guidry Living Trust of 1996**
    **Mark B. Guidry**
    **Phyllis B. Guidry**
    **Matthew Joel Guidry**


**Paul G. Moresi  III**
**Attorney at Law**
**P. O. Box 1140**
**Abbeville, LA 70511-1140**
**Counsel for Defendants/Appellees:**
    **Thomas Guidry**
    **Edith Gaspard Guidry**

**Pickett, Judge.**

The defendants, Matthew, Phyllis, and Mark Guidry, appeal a judgment of the trial court finding that an act of co-mingling executed by the defendants and the remaining Guidry heirs and recorded at entry number 9704329 in the Conveyance Records of Vermilion Parish created a mineral servitude subject to a prescriptive period of seven years and not a servitude for a fixed term of seven years. We affirm the judgment of the trial court.

## PROCEEDINGS IN THE DISTRICT COURT

The facts in this case and the proceeding in the trial court were explained by the trial court in a document entitled "RULING":

> This concursus proceeding was instituted by St. Mary Operating Company seeking instructions relating to distribution of royalties to the Thomas Guidry heirs, all listed defendant's [sic] in this suit.
>
> Many facts are not in dispute. The parties executed an act of "Co-Mingling and Exchange" recorded April 4, 1997 which contained the following paragraph:
>
> > "All of the parties hereto agree that this exchange of minerals, which creates a mineral servitude, will last a period of seven (7) years from the date of recordation of this instrument in the public records of Vermilion Parish, Louisiana".
>
> At that time, there was no production or mineral operations on the tract in question; however, subsequent operations produced oil and gas from the property prior to April 2004. [The Guidry well, located in Section 41, Township 13 south, Range 4 East of Vermilion Parish and bearing Office of Conservation number 24688.]
>
> The question submitted to the Court is whether the mineral servitude ended April 4, 2004 (7 years from recordation of the co-mingling instrument) or has it been extended by the clear provisions of the mineral code [i.e., was the seven year period a fixed term after which the mineral rights would revert to the land owners or was this simply a shortening of the ten year prescriptive period provided for in R.S. 31:27].

1

There is little dispute among the parties relating to the reasons for the co-mingling agreement. All acknowledge their belief that their mother wanted the minerals on all properties donated to remain in indivision.

Mark and Matthew Guidry take the position that the servitude was for a fixed term and not subject to interruption as defined in the mineral code.

They further argue that the language of the instrument is clear and unambiguous and no parole evidence should be admitted to alter the agreement. The Court disagrees. Since there is no indication in the instrument as to whether the laws relating to mineral servitudes were to be avoided, it is both proper, and necessary, to attempt to determine the intent of the parties through parole evidence.

After review of the testimony, I am convinced that at the time the co-mingling instrument was executed no agreement existed on the question presented to the Court. Some parties never read the instrument and had little or no knowledge of mineral law at the time. No party testified that they discussed with other siblings what would happen should production occur within 7 years, but most assumed they would continue to receive a proportionate interest in revenue as long as production continued. Only Matthew and Mark testified they thought their siblings' mineral rights would revert to them in seven years regardless of events in the interim.

The Court was particularly impressed with the testimony of Edith Gaspard. After notice of the impending termination of her mineral interest, she confronted her brother Mark. She testified Mark was surprised by the position taken by St. Mary Operating (favoring his position) but was not going to object since it was "going his way". She also testified he acknowledged the family's original intent to continue to share in this production equally. This testimony was never refuted by Mark when he testified.

As stated earlier, there was no express agreement at the time the instrument was executed relating to the interrt1ption issue. I do not believe it was even considered. At the same time, I find there was no intent on the part of the parties to alter the law relating to mineral servitudes, except to shorten the period to coincide with what they believed was their mother's wishes at the time she donated the properties to her children. The only logical position is that unless the parties intend the contrary, the law applies.

Having so found, the Court is of the opinion that unless there is an agreement to the contrary, the laws specifically relating to minerals

2

must apply and the servitude created in the co-mingling instrument continues to exist as a result of the interruption.

Finally it should be noted that Mark contacted an Attorney and had the instrument drafted. One could apply the general law that any ambiguity is to be construed against his interest. However, a better approach is to hold that in interpreting mineral contracts, the special laws applicable to minerals should be enforced absent a clear intent to avoid them.

## LAW AND DISCUSSION

Louisiana Revised Statutes, Title 31, contains the state's Mineral Code. The section of the Mineral Code at issue in this suit is R.S. 31:74, which states: "Parties may either fix the term of a mineral servitude or shorten the applicable period of prescription of nonuse or both. If a period of prescription greater than ten years is stipulated, the period is reduced to ten years." In *McDermott, Inc. v. M-Electric & Construction Co.*, 496 So.2d 1105 (La.App. 4th Cir.1986) our colleagues of the fourth circuit reminded us of the following:

> The Louisiana Supreme Court has recognized the right of parties to agree to a shorter prescriptive period than that provided by statute provided certain conditions are met. *Leiter Minerals, Inc. v. California Co.*, 241 La. 915, 132 So.2d 845 (1961). In *Leiter Minerals, supra* at 853, the Louisiana Supreme Court set forth the requirements:
>
>> Parties to a contract are free to stipulate as they please so long as their stipulations are not contrary to good morals or public policy or do not violate some law. La.Civ.Code Arts. 1764, 1895, 1901; *American Cotton Co-op. Ass'n v. New Orleans & Vicksburg Packet Co.*, 180 La. 836, 157 So. 733; *Mente & Co. v. Roane Sugars, Inc.*, 199 La. 686, 6 So.2d 731; *Givens v. Washington Nat. Ins. Co.*, La.App., 170 So. 810; *Morris Buick Co. v. Ray*, La.App., 43 So.2d 83. It has also been recognized in this state, and by the courts of other states and the Supreme Court of the United States, that those entering into a contract may stipulate a different period of prescription or limitation from that provided by a state statute, and that the limitation or prescriptive period as thus stipulated, if reasonable, will be binding upon the parties. *Blanks v. Hibernia Ins. Co.*, 36 La.Ann. 599; *Ray v. Liberty*

> *Industrial Life Ins. Co.*, La.App., 180 So. 855; *see Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (in the absence of a controlling statute to the contrary); *Hoagland v. Railway Express Agency, Fla.*, 75 So.2d 822. See also Wood, Limitation of Actions, v. I, p. 145, sec. 42 (4th ed. 1916).

*Id.* at 1111-12.

The courts of our state are guided in their interpretation of R.S. 31:74 by the Official Comments to that article. The Comments state in part as follows (emphasis ours):

> [T]he supreme court has indicated in *Leiter Minerals, Inc. v. California Co.*, 241 La. 915, 132 So.2d 845 (1961) that parties may fix a period of prescription by contract which is different from and less than that which would normally be imposed by law if they had been silent. . . .

> The limitation that parties cannot contract for a prescriptive period greater than ten years is firmly established in the jurisprudence. *E.g., Hodges v. Norton, supra*; *Bodcaw Lumber Co. of La. v. Magnolia Petroleum Co.*, 167 La. 847, 120 So. 389 (1929); *LeBleu v. LeBleu*, 206 So.2d 551 (La.App.3d Cir. 1968); *Ober v. McGinty*, 66 So.2d 385 (La.App.2d Cir. 1953); but see *Chicago Mill & Lumber Co. v. Ayer Timber Co.*, 131 So.2d 635 (La.App.2d Cir. 1961). The question of when a contract contrary to this rule has been executed is not solved by Article 74. In this regard, see the discussion of *LeBleu v. LeBleu, supra*, and the discussion of other problems concerning the date of creation of mineral servitudes following Article 28.

> Consideration was given to the matter of establishing rules of construction to aid the courts in determining whether parties intend to fix the duration of a mineral servitude or to subject it to a prescriptive period other than that which would be imposed if the parties were silent. However, it was determined merely to state some guidelines for construction in this comment. In the event of silence as to the term of a mineral servitude, the right created is permanent or perpetual, but it is subject to loss by accrual of the prescription of nonuse. Parties to an agreement which does not specify a fixed term or a prescriptive period other than the legal one are, of course, free to limit the duration of the rights created or to alter the prescriptive period by subsequent agreement, subject to the same limitations applicable to the original instrument.

> It is established by *Hodges v. Norton, supra*, and *Bodcaw Lumber Co. of La. v. Magnolia Petroleum Co., supra*, that if a term greater than

4

ten years is specified, this fixes the duration of the interest created. It is, however, still subject to the prescription of nonuse and will expire prior to the running of the specified term if not used within the legal prescriptive period.

It is more difficult to construe instruments specifying a period less than ten years. Unless the creation of a mineral servitude is a part of a security transaction, it is rare that a party will, in the ordinary situation, contract for the creation in his favor of an interest with a fixed term less than ten years. *Thus, it is suggested that in the absence of some expression to the contrary in the instrument in question, the specification of a period less than ten years for a mineral servitude should be construed as an agreement on a prescriptive period less than ten years, and the interest should be considered subject to the rules of use and thus renewable by exercise of the rights granted or reserved. Parties are, of course, free to specify that the stated number of years is the term of the interest and not a prescriptive period.*

Appellants argue that the trial court erred in taking testimony as to the intent of the parties in drafting and executing the co-mingling agreement. In *Bown v. Austral Oil Company, Inc.*, 322 So.2d 866 (La.App. 3rd Cir.1975), *writ denied*, 326 So.2d 370 (La.1976) we stated:

The intention of the parties is of paramount importance and must be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety.

LSA-C.C. Article 1945 provides that agreements have the effect of law between the parties, who alone can abrogate or modify them, and that the courts are bound to give effect to all contracts according to the true intent of the parties when the language is clear and leads to no absurd consequences.

It is not within the province of the court to alter or make new contracts for the parties, its duty being confined to the interpretation of the agreements between the parties, and in the absence of any ground for denying enforcement, to render them effective. *Texas Co. v. State Mineral Board*, 216 La. 742, 44 So.2d 841 (1949).

*Id.* at 870.

5

Further, in *Claitor v. Delahoussaye*, 02-1632 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, *writ denied*, 03-1820 (La.10/17/03), 855 So.2d 764, our colleagues of the first circuit explained as follows:

The general rules of contract interpretation found in articles 2045— 2057 of the Louisiana Civil Code establish that when the words of a written agreement are clear and explicit and lead to no absurd result, no further interpretation as to the common intent of the parties can be made. *See Martin Exploration Company v. Amoco Production Company*, 93-0349, p. 5 (La.App. 1 Cir. 5/20/94), 637 So.2d 1202, 1205, *writ denied*, 94-2003 (La.11/4/94), 644 So.2d 1048. Furthermore, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. *Id.* When contract terms are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to the provisions in a contract, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In such cases, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact to be inferred from all of the surrounding circumstances. *Id.*

A determination of the existence or absence of an ambiguity in a contract entails a question of law. An appellate review that is not founded upon any factual findings made at the trial court level but, rather, is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. *Hawco Mfg. Co., Inc. v. Superior Chain, Inc.*, 98-1037, pp. 4-5 (La.App. 1 Cir. 9/24/99), 754 So.2d 1062, 1066. In such cases, appellate review is simply whether the trial court was legally correct. *Martin Exploration Company*, 637 So.2d at 1206.

To determine the meaning of words used in a contract, a court should give them their generally prevailing meaning. LSA-C.C. art.2047. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. art.2048. A provision susceptible of different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. LSA-C.C. art.2049. Furthermore, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art.2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053.

*Id.* at 478.

The co-mingling agreement did not specify if the seven year period prescribed in the document was an agreement on the prescriptive period or on the term of the mineral servitude itself. Thus, we find it was not an error for the trial court to look beyond the four corners of the document in order to ascertain the intent of the parties.

Considering the wording of the document, the testimony of the parties and the Official Comments to La.R.S. 31:74, we find no error in the ruling of the trial court.

Accordingly, for the reasons stated, we affirm the judgment of the trial court. All costs of this appeal are assessed against the appellants.

**AFFIRMED.**