CARAWAY, J.,
concurring.
| ,This mineral reservation dispute presents a unique contractual interpretation setting in which the literal words for a term period of years are being avoided and effectively interpreted out of the contract. The majority and trial court instead interpret the literal statement reserving a mineral servitude “for a period of ten years” as creating a servitude of uncertain and indefinite duration. The “ten year period” is no longer literally a term of years but only an implied reference to the 10-year prescription for nonuse. Are the clear words of the contract therefore being disregarded under the pretext of pursuing a presumed intent? I concur to give the Landowners an answer to that question.
The Landowners correctly rest their argument on the Civil Code’s first rule for the interpretation of contracts:
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.
La. C.C. art. 2046.
In this unusual setting, it cannot be said that the fixing of a mineral servitude for “a period” or term of ten years produces “absurd consequences.” This is because the Mineral Code expressly allows parties to “fix the term of a mineral servitude.” La. R.S. 31:74. Nevertheless, because of the nature of the mineral servitude as discussed below, a fixed-term mineral servitude inherently promotes the possibility of some harsh, if not absurd, consequences. This, in my opinion, opens the door to an unusual type of ambiguity, raising the possibility of two contractual 12constructions: one, resting on the very strong implication that the parties did not intend to extinguish the mineral servitude at a fixed time, and the other, resting on the clear and explicit language for a 10-year “period” of the servitude’s existence or term.
A provision in a contract fairly susceptible of two constructions is uncertain and ambiguous. Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363 (1944); Allied Chemical Corp. v. Dye, 441 So.2d 776 (La.App. 2d Cir.1983), writ denied, 444 So.2d 119 (La. 1984). Under such circumstances, the courts must determine the meaning that best conforms to the parties’ intended object of the contract. La. C.C. art. 2048. To settle the choice between two possible constructions and end the ambiguity, the intentions of the parties can be ascertained by consideration of evidence outside the instrument. Rudman, supra, 206 La. at *960 1066. Additionally, the interpretation of the instrument may be aided by the other rules of construction provided in the Civil Code. La. C.C. arts. 2047 et seq.
The difficulty posed in this case by the literal language for the “ten year period” is highlighted by the early case of Hodges v. Norton, 200 La. 614, 8 So.2d 618 (1942), where the Louisiana Supreme Court recognized that a mineral servitude “reserved for a period of 15 years” created a fixed-term servitude. Other than the difference between 10 and 15 years, which is an important distinction, Hodges’s “period of years” is the same language used in the present reservation. The Hodges court understood the plain import of those words as literally expressing a term that could extinguish the servitude. Thus, I conclude from Hodges that one construction of the l8present reservation (hereinafter the “Literal Construction”) is that it expressed a fixed term.
Nevertheless, the difference in the number of years from 15 to 10 does distinguish Hodges from the present dispute. When minerals are reserved for a period of time extending beyond 10 years, the parties are charged to know that ’ the extent of the mineral servitude is subject to the supplemental provisions of the law of the prescription of nonuse and that use of the servitude must occur in the first 10 years. Therefore, it is more clearly understood that the 15-year concept expressed in the Hodges contract has nothing to do with prescription and must be interpreted as a fixing of a term. The Hodges opinion certainly viewed that language as fixing a 15-year term at which time the mineral servitude was extinguished.
Unlike Hodges, the 10-year reservation in the present case aligns directly with the 10-year regime of prescription, strongly raising the presumption that the parties were only referring in their contract to such normal prescription (hereinafter the “Prescription Construction”). Nevertheless, a simple expression of a mineral reservation, without any reference to a period of years, also imposes the prescriptive 10-year period of nonuse upon the mineral servitude. Therefore, the parties’ addition of the 10-year language in their mineral reservation was arguably redundant, unless a term was intended.
What makes the Prescription Construction a viable possible interpretation, however, is the nature of the mineral servitude. The mineral servitude is the right of enjoyment of land belonging to another for the | ^purpose of exploring for and producing minerals. La. R.S. 31:21. The exploration and production activities are extensive and expensive, resulting in operations, equipment and fixtures that may remain on the servient estate for years during continuing operations and production. Additionally, the owner of the servitude usually is not an oil and gas company. Therefore, the owner’s use of the mineral servitude is conducted under lease agreements with operators, and those operators’ economic investments for the discovery and production of oil and gas would not be expected under a lease from a fixed-term mineral seiwitude owner.
The early Louisiana cases that recognized the possibility of a fixed-term mineral servitude drew from the expressions within the Civil Code allowing predial ser-vitudes on a term. See, former Civil Code art. 821 (1870) and La. C.C. art. 773. The predial servitudes identified in the Civil Code, such as the right of passage or the right of drawing water, might be expected to be limited on occasion for a period of 5 or 10 years. A grant of such predial servitude “for a period of 10 years” can be taken literally because the use of the ser-vient estate by the servitude’s owner is *961 intermittent without any allowance for the placement of fixtures on the servient estate or beneath its surface for constant oil and gas activities. The nature of oil and gas activities desired by one reserving a mineral servitude inherently includes long-term operations perpetually tied to uncertain events for the successful exploration and development of the servient estate.
From this understanding of our law and the nature of the mineral servitude, I find that the disputed language in the mineral reservation is | fifairly susceptible of the Literal Construction and the Prescription Construction, making the contract uniquely ambiguous. The cited jurisprudence and contractual interpretation rules of the Civil Code indicate that extrinsic evidence can be used to determine the intention of the parties. However, in the absence of such clarifying extrinsic evidence, I would hold that the near absurdity of a fixed-term mineral servitude on land, undeveloped for oil and gas, should make the Prescription Construction the priority interpretation which a court should apply.
Following these principlés in this summary judgment setting, the Servitude Owners rest their case on the face of the language of the mineral reservation. They deny that any extrinsic evidence exists which demonstrated that they intended to create a servitude that would be extinguished in 10 years despite existing discovery efforts for oil and gas or ongoing production at the end of the alleged term. Servitude Owners further receive the benefit of the rule of construction of Civil Code Article 2056, as the ambiguous provision must be interpreted against the party who furnished its text. La. C.C. art. 2056. Moreover, opposition evidence was not brought forth by the Landowners reflecting the thoughts of the attorney who prepared the deeds for the original landowner or whether the attorney shared those thoughts with the original mineral servitude owners.
Since the Prescription Construction should be the priority interpretation for this mineral reservation, the Landowners were required to produce factual support to establish that they would be able to satisfy their evidentiary burden at trial demonstrating that the parties intended the |fimineral servitude to be on a fixed term. La. C.C.P. art. 966(C)(2). In this case, the Landowners brought forth no extrinsic evidence of quality in the form of written exchanges between the original parties to the deeds. Such exchanges would have to reveal a mutuality of intent for the mineral servitude to be extinguished at the end of 10 years, ending all existing successful operations on the property by the Mineral Servitude Owners and their mineral lessees. James Taylor’s affidavit and deposition do not reveal sufficient communication between the parties demonstrating a mutual understanding of the parties concerning the harsh results of a terminable mineral servitude.
Notably, the authors of the Comment to Article 74 of the Mineral Code had much discussion about the need for construction of instruments and interpretation necessary for this difficult contractual snare of circumstances. Clear and explicit words of a contract, however, need no further interpretation. While offering “guidelines for construction,” the Comment never identifies exactly what language or lack thereof might open the door for interpretation. Yet, the Comment indicates that it would be “rare” that a party would ever create in his favor a fixed-term mineral servitude. That rare and unusual event, which would border on the absurd for this unexplored property, places the Literal Construction in much doubt. Therefore, the choice between the two possible constructions must be the Prescription Con *962 struction because the Landowners brought forth no evidence of the parties’ mutual intent to the contrary.