FORET, Judge.
This appeal is from a judgment rendered in favor of plaintiff, Ernest Simon & Son (Simon), against the defendants, Perma-Clad of Georgia, Inc. (Perma-Clad) and its insurer, Aetna Casualty and Surety Company (Aetna), for damages for breach of contract. The plaintiff was awarded damages in the amount of $51,694.00 and costs and attorney’s fees totalling $7,500.00, with interest from date of judicial demand. The issues presented by Perma-Clad and Aetna on appeal are:
(1) That the trial court erred in awarding to Simon the $3,720.00 it paid to Perma-Clad for the purchase of a surety bond;
(2) That the trial court erred in awarding the $10,974.00 spent by Simon to install a temporary roof; and,
(3) That the trial court erred in awarding the $37,000.00 difference in price between Perma-Clad’s bid and the cost of the new subcontract.
We affirm the judgment of the trial court.
The defendant, Perma-Clad, a roofing manufacturer, entered into a contract with Simon on January 2, 1980, to furnish the roof on the J.H. Williams Middle School addition in Abbeville, Louisiana. The defendant had been invited to bid on the construction project and, after a review of the plans and specifications submitted by the project architect, Elliott Lormand, it submitted a low bid of $310,000.00. This bid was based upon the furnishing and installation of their “Versa Pan” roofing system.
Under the terms of the contract, Perma-Clad was to obtain a performance bond for 100% of the contract price. Perma-Clad obtained the required bond from Aetna and Simon paid to Perma-Clad $3,720.00 for the cost of the bond.
Perma-Clad was to install its roofing system on the new construction within two hundred days of the contract date and complete the second phase of the project in five *215 hundred days from the contract date. A great deal of correspondence was exchanged between the parties with no result. By the end of August of 1980, no roof had been installed nor had work on the installation even commenced by that time. The parties continued in their attempts to provide and approve a roofing system for the project with no avail. At the end of September, the Vermilion Parish School Board directed the architect and Simon to take whatever steps were necessary to make the building watertight in order to avoid further damage to the building. A temporary roof was thereafter installed and demands made upon Perma-Clad to provide a roofing system in accordance with the architect’s plans and specifications at the earliest possible time as the project had already been delayed. They were additionally requested to furnish the warranty information and test results required by the contract. Perma-Clad submitted the warranty information on the paint, but was unable to provide current test results satisfactory to Mr. Lormand. On December 16, 1980, Simon informed Perma-Clad that pursuant to their right under Article 7 of the subcontract, they were taking over the project and intended to complete it at Per-ma-Clad’s cost.[1] Simon then contracted with Architectural Engineering and Southwestern Materials and Supply, Inc. to complete the project at an additional cost of $37,000.00 over Perma-Clad’s contract price. Simon then instituted this suit for the damages resulting from Perma-Clad’s breach of its contract.
As to the first issue raised by Per-ma-Clad, we cannot say that the trial court was clearly wrong in reimbursing Simon for the amount paid to Perma-Clad representing the cost of the performance bond. Simon has had the protection of the bond, but it paid for its own protection. The contract did not call for Simon to pay for Perma-Clad’s bond and the record does not reveal Simon’s reason for paying. Therefore, in the absence of any evidence regarding an agreement between the parties that Simon should pay for the bond, we feel that Simon is entitled to be reimbursed for that cost as an element of damages for Perma-Clad’s breach of contract.
The defendants contend that Simon should not recover the $10,974.00 it spent during the months of October, November, and December to install a temporary roof because Simon failed to mitigate its damages when it knew as early as February of 1980 that Perma-Clad would be unable to perform. The record shows that Perma-Clad represented to the plaintiff that it could produce anything to the architect’s specifications and this included adapting the Versa Pan roof system. Despite the architect’s rejection of everything that Per-ma-Clad submitted, Perma-Clad did not tell Simon or Mr. Lormand that it could not perform. As late as September, Perma-Clad was submitting models and mock-ups for the architect’s approval. Perma-Clad was also unable to supply the test results on its roofing system as required by the contract.
The record amply bears out the fact that the parties did everything within their power to perform the contract, with the end result being that Perma-Clad was not able to adapt the roofing system upon which it had submitted its bid to conform with the architect’s plans and specifications. In an August 25, 1980 mailgram sent to Simon, Perma-Clad said that it preferred to withdraw from the project unless Simon would *216 consider a change order increasing the price by $35,000.00 to provide an eave fascia detail demanded by Mr. Lormand. Yet Perma-Clad continued to attempt performance and Simon allowed them every opportunity to perform.
From our review of the record, we cannot say that Simon was unreasonable in continuing to allow Perma-Clad to perform past September even though the project was becoming seriously delayed. Simon relied on Perma-Clad’s representations that it could supply the needed roofing system for the price Simon had agreed to pay and should not therefore be penalized.
“The theory of a ‘duty to mitigate’ is merely that avoidable consequences of a breach are not recoverable (see Restatement, Contracts § 45 Comment d; Willi-ston, Contracts, 3d ed. § 1353); one breaching a contract owes only the damages ‘which the other party has sustained by his default [i.e. breach]’, La. C.C. 1930.” Electrodata Mfg. Corp. v. Domed Stadium Hotel, 362 So.2d 1122 (La.App. 4 Cir.1978).
The record does not support any actual or imputed “knowledge” on Simon’s part that Perma-Clad could not perform and therefore was not required to breach the contract itself in order to mitigate its damages. Perma-Clad did not show that had the contract been terminated in August that the installation of a temporary roof was an avoidable consequence of Perma-Clad's delay in performance and/or failure to unequivocably state that it could not perform. We do not feel that the trial court was clearly wrong in awarding the $10,974.00 as an element of damages.
The above stated reasons are applicable to Perma-Clad’s argument that the additional cost of $37,000.00 in the contract price was attributable to Simon’s failure to mitigate its damages. Again, Simon made every attempt to facilitate Perma-Clad’s performance before and after August, and we do not find that their actions were unreasonable or that any different result was required by law.
Perma-Clad’s failure to provide a roofing system acceptable to the architects, whose plans and specifications can be presumed to have been well known to Perma-Clad, and its failure to provide satisfactory test results for the roofing system prompted Simon to finally take over the job in December of 1980. The defendant, Perma-Clad, is therefore liable for any additional costs required for the completion of the job by the terms of Article 7 in the contract between Perma-Clad and Simon. Again, we will not disturb the finding of the trial court with regard to this element of damages.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.

. Article 7. Should the Sub-contractor become insolvent, or apply to the bankruptcy court to be adjudged a voluntary bankrupt, or proceedings be instituted against the Sub-contractor to have him adjudged an involuntary bankrupt, or proceedings be taken against the Sub-contractor looking to the appointment of a receiver or syndic, or any proceedings be instituted for the seizure or sale of the property used and employed by the Sub-contractor in the execution of the contract or should the Sub-contractor abandon said work or for any reason fail, refuse, or neglect to prosecute the same with all due diligence, dispatch efficiency the General Contractor shall have the right at the General Contractor’s option, upon five days notice to the Subcontractor to take over said work and complete the same at the cost to the Sub-contractor and the Sub-contractor’s bondsman.