# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 15-869


**TIMOTHY M. VAN MOL, ET UX.**

**VERSUS**

**KEN BEASLEY**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 2013-CV-00708
HONORABLE GARY KELTON HAYS, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

## DAVID KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Billy Howard Ezell, and David Kent Savoie, Judges.


**AFFIRMED.**

**George C. Gaiennie, III**
**Gainennie Law Firm, L.L.C.**
**1920 Jackson St.**
**P.O. Box 1408**
**Alexandria, LA 71309**
**(318) 767-1114**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Timothy M. Van Mol**
    **Ramona D. Van Mol**

**Donna M. Johnson**
**Armour Law Firm**
**1744 Jackson St.**
**P.O. Box 710**
**Alexandria, LA 71309**
**(318) 442-6611**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Ken Beasley**

**SAVOIE, Judge.**

This matter involves a lease dispute over rent owed, and specifically whether a notice of move-out provision included in the written lease allowed the lessee to terminate the lease prior to the expiration of the lease's term. For the following reasons, we affirm the trial court's judgment awarding unpaid rent to the lessor.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant-Appellant Ken Beasley, who owned a lawn service business, leased property on Whispering Pines Loop in Pineville, Louisiana from Plaintiff-Appellee Ramona Van Mol for purposes of housing his employee, Mr. Ken Bamer, and Mr. Bamer's wife and children.

A written lease prepared by Mrs. Van Mol was signed on October 3, 2012 during a meeting between Mrs. Van Mol, Mr. Beasley, and Mr. Ephrain Wolfe, who was a manager for Mr. Beasley's business. Mrs. Van Mol was aware that Mr. Bamer would be living at the property. The lease stated that it was a twenty-four month lease, beginning October 1, 2012 and ending October 1, 2014. Rent was $1,000 per month. Mr. Beasley paid $6,000 up front, which included a $1,000 security deposit. He then paid an additional $1,000 per month beginning in March, 2013.

Mr. Beasley and Mr. Wolfe asserted at trial that the lease contained two additional pages that had not been submitted by Mrs. Van Mol, including a provision stating that the lessor must receive sixty days written notice before move in order to receive the deposit back, and that this notice was also required if the lease was ending. Mr. Beasley testified that it was his understanding "[t]hat if we needed to leave, we would give a sixty (60) day notice and we would be okay."

Mrs. Van Mol initially disputed that the additional pages provided by Mr. Beasley, including the notice provision, were part of the lease. However, at trial, she admitted that a handwritten notation appearing at the top of the page on which the notice provision appeared was in her handwriting. While she initially testified that she did not intend for the additional pages to form part of the lease, she then conceded "[b]ut, I guess they are." The trial court stated in its written reasons that Mrs. Van Mol "finally admitted to the Court" that the additional pages of the lease submitted by Mr. Beasley were part of the lease agreement between the parties, and it therefore considered them as part of the lease.[1]

On May 9, 2013, Mr. Beasley sent an email to Mrs. Van Mol stating that Mr. Bamer would be moving out on July 1, 2013, but that he could move out sooner if she found another tenant. On June 24, 2013, Mr. Van Mol, at the request of Mrs. Van Mol, sent an email to Mr. Wolfe inquiring as to the plans concerning the remainder of the lease. Mr. Wolfe responded indicating that Mr. Bamer would be moving out July 31, 2013 and that they "[would] no longer be needing [the Van Mols'] services."

On or about July 29, 2013, Mrs. Van Mol inspected the property and the Bamers gave the keys to her. Mr. Beasley had paid $1,000 per month in rent through July 2013, for a total of $11,000. Mrs. Van Mol chose not to attempt to lease the property to anyone else after the Bamers moved out.

On August 26, 2013, the Van Mols sent a demand letter to Mr. Beasley regarding unpaid rent. On October 1, 2013, counsel for Mrs. Van Mol sent another demand letter to Mr. Beasley requesting payment for the remainder of the lease's

---

[1] Ms. Van Mol did not specifically appeal this finding, although she contends in her brief that the finding was error. However, the trial court's factual finding is not manifestly erroneous, as it is reasonably supported by the record.

two-year term. In response, counsel for Mr. Beasley sent a letter indicating that Mr. Beasley was not willing to pay anything further and requested return of the security deposit.

The Van Mols filed suit on November 15, 2013, seeking unpaid rent and the remaining installments through the end of the lease term, as well as attorney fees in and interest in accordance with the lease agreement. Trial was held April 29, 2015. Counsel stipulated at trial that Mrs. Van Mol was not seeking to retain the security deposit, but rather asked that the $1,000 security deposit be applied to unpaid rent.

Ultimately, the trial court rendered judgment in favor of Mrs. Van Mol and against Mr. Beasley for $13,000 in rent owed through October 1, 2014, as well as interest and $1,950 in attorney fees. In its written reasons, the trial court stated:

> The Court is of the opinion that although the Lease Agreement is poorly written and that both Plaintiff and Defendant should always seek legal advice when entering into contractual obligations, the term of the lease was 24 months at a rate of $1000.00 per month and that the Defendant breached said contractual obligation by failure to pay. The Court interprets the 60 day written notice before move was to receive deposit back and also the notice was required if the lease was ending and the tenant planned to move out of said property. The Court fails to see where this 60 day written notice would terminate said lease and extinguish the remaining rental obligation.

Mr. Beasley appeals, asserting that the trial court erred by (1) not construing the ambiguous lease agreement against Mrs. Van Mol, (2) not interpreting the sixty-day notice provision as a means by which Mr. Beasley could terminate the lease prior to term, and (3) finding that Mr. Beasley breached his contractual obligation and awarding damages in favor of the Plaintiff, arguing that the Van Mols failed to mitigate any damages they may be owed.

## LEASE INTERPRETATION

3

Mr. Beasley's first two assignments of error involve the trial court's interpretation of the lease. Therefore, we consider them together.

## Contract Interpretation and Standard of Review:

The Louisiana Supreme Court has stated:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La. 5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims*, 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans*, 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La. 1/14/94), 630 So.2d 759, 763.

*Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279.

> To determine the meaning of words used in a contract, a court should give them their generally prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. A provision susceptible of different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Furthermore, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

*St. Mary Operating Co. v. Guidry*, 06-1495, p. 6 (La.App. 3 Cir. 4/4/07), 954 So.2d 397, 402, *writ denied*, 07-962 (La. 6/29/07), 959 So.2d 520, *quoting Claitor v. Delahoussaye,* 02-1632 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, *writ denied*, 03-1820 (La. 10/17/03), 855 So.2d 764 (internal citations omitted).

Appellate courts conduct a *de novo* review of a trial court's interpretation of a contract's language that is not based upon any factual findings. *Derouen v. Nelson*, 09-467 (La.App. 3 Cir. 3/10/10), 32 So.3d 1079.

> When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to the contract's provisions, or the parties' intent cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. La.Civ.Code art. 1848; *McCarroll v. McCarroll*, 96-2700 (La.10/21/97), 701 So.2d 1280. Whether or not the terms of a contract are ambiguous is a question of law, and appellate review of questions of law is simply to determine whether the trial court's interpretive decision is legally correct. *Morin v. Foret*, 98-0120 (La.App. 3 Cir. 4/14/99), 736 So.2d 279, writ denied, 99-2022 (La.10/29/99), 748 So.2d 1165.
>
> . . . .
>
> . . . "Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Derbes v. GBS Props., LLC*, 04-1460, p. 5 (La.App. 5 Cir. 4/26/05), 902 So.2d 1109, 1112. Appellate courts may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). . . . . In applying these general rules to the trial court's factual determinations, we are also mindful of the well-established rule of construction that the ambiguity or contradiction which exists in the language of a contract must be construed against the party who prepared it. La.Civ.Code art. 2056; *Kenner Indus., Inc. v. Sewell Plastics, Inc.*, 451 So.2d 557 (La.1984).

*Brafa v. Christ*, 05-270, pp. 5-8 (La.App. 3 Cir. 11/2/05), 915 So.2d 957, 961-963.

**Analysis**

Keeping in mind the above principles, we now turn to the contract in the instant matter. At issue is whether the lease, as drafted by Ms. Van Mol, the lessor, provided a way by which Mr. Beasley, the lessee, could terminate the lease prior to the expiration of the two-year lease term. In addition to the provision stating that the lease is a twenty-four month lease, the written lease contains the following provisions:

1. Security deposit of $1000.00 to be returned after satisfactory interior inspection by the lessor, within two weeks of move out if the lease contract has been fulfilled.

2. Lessor must receive 60 day written notice before move, in order to receive deposit back. This notice must also be given if the lease is ending and you plan to move.

. . . .

4. . . . If rent is ten (10) days late, lessee will be required to move im immediately, with forfeit of deposit.

Mr. Beasley asserts on appeal that the first sentence of paragraph 2 above must be read as allowing a lessee to terminate the lease with sixty-days written notice of move, or otherwise the second sentence is rendered meaningless. Mr. Beasley additionally argues that the trial court's indication that the contract was "poorly written" is a finding that the contract was ambiguous, and therefore the trial court was required to, but did not, construe the provision in his favor as allowing him to terminate the lease by providing the requisite notice.

Mrs. Van Mol argues that the trial court correctly found that the provision at issue addresses only requirements for the return of the security deposit, and not lease termination, and therefore any ambiguity is irrelevant as Mrs. Van Mol did not seek to keep the security deposit. We agree with Mrs. Van Mol.

When reading the above provisions in light of each other and in a manner that best conforms to the object of the contract, we find that the provisions unambiguously address only the conditions required for the return of a security deposit. Paragraph 1 requires a satisfactory interior inspection of the property within two weeks of move out, and Paragraph 2 goes on to require the lessee to provide sixty-days' notice to the lessor prior to moving. This logically allows the lessor time to schedule the inspection required by Paragraph 1. Paragraph 2

contemplates two scenarios: (1) a lessee who plans on moving out before the last day of the lease term, or (2) a lessee who does not plan on moving out until the last day of the lease's term. Paragraph 2 makes clear that, in both scenarios, the lessee must give a sixty-day written notice to the lessor. We fail to see how these provisions involving the return of a *security deposit* should also be read to allow the lessee to *terminate* his obligation to pay rent prior to the stated two-year term. Therefore, we affirm the trial court's interpretation of the contract.

## DAMAGES

In his third assignment of error, Mr. Beasley contends that the trial court's award of unpaid rent is in error because Mrs. Van Mol failed to mitigate her damages. He argues that Mrs. Van Mol made no attempt to lease the property to another lessee after receiving notice that Mr. Bamer was vacating the property and no longer needed it.

"An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When the obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." La.Civ.Code. art. 2002.

> "The theory of a 'duty to mitigate' is merely that *avoidable* consequences of a breach are not recoverable (see Restatement, Contracts § 45 Comment d; Williston, Contracts, 3d ed. § 1353); one breaching a contract owes only the damages 'which the other party has sustained by his default [i.e. breach][.]'"

*Ernest Simon & Son, Inc. v. Perma-Clad of Georgia*, 459 So.2d 213, 216 (La.App. 3 Cir. 1984), *quoting Electrodata Mfg. Corp. v. Domed Stadium Hotel,* 362 So.2d 1122 (La.App. 4 Cir. 1978); *writ denied*, 463 So.2d 603 (La.1985).

"The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense." *MB Industries, LLC v. CNA Ins. Co.*,

11-303, p. 10 (La. 10/25/11), 74 So.3d 1173, 1181. "It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong[.]'" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

Mr. Beasley's argument on appeal ignores the following language provided in the lease (emphasis added):

> In the event of failure or neglect to pay rental . . . within thirty days after it becomes due, **Lessor shall have the right to declare the remaining installments immediately due** and exigible, **or** Lessor shall have the option and right to declare this lease terminated and may enter upon and take possession of the premises without the necessity of any legal action whatsoever, reserving unto Lessor the right to enforce collection of all past due rental up to the time of re-entry.

The record supports a finding that Mrs. Van Mol chose to seek the remaining amount of the rent due under the lease term after Mr. Beasley stopped paying rent, rather than declaring the lease terminated and taking possession of the property, as she was entitled to do under this provision. Mrs. Van Mol testified that after the Bamers moved out, she cleaned the property and got it ready in case Mr. Beasley wanted other employees to use it. She testified that no one lived at the property from the time the Bamers moved out until the end of the lease term and that she did not attempt to lease the property to someone else.

Under the terms of the lease, Mrs. Van Mol was permitted to declare the remaining amount of rent due, rather than terminating the lease. Since she did not choose to terminate the lease, Mrs. Van Mol could not re-lease the property without also being in breach of the lease. Mrs. Van Mol was not required to breach the lease in order to mitigate damages. Therefore Mr. Beasley's argument lacks merit.

Moreover, Mr. Beasley failed to present any evidence suggesting that Mrs. Van Mol *could have* rented the property before the expiration of the lease's term (October 1, 2014) with reasonable effort after receiving notification that Mr. Beasley would be abandoning the property after the Bamers moved out. Therefore, we cannot say that the trial court's refusal to reduce the amount of unpaid rent awarded to Ms. Van Mol was erroneous.

## CONCLUSION

For the reasons set forth above, we affirm the trial court's ruling in favor of Mrs. Van Mol. Costs of this appeal are assessed to Appellant Ken Beasley.

**AFFIRMED.**