STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-490

SPECIALTY RETAILERS, INC.

VERSUS

RB RIVER IV LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2016-3347
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

Jennie P. Pellegrin
Phillip M. Smith
Neuner Pate
Post Office Box 52828
Lafayette, Louisiana  70505-2828
(337) 237-7000
Counsel for Plaintiff/Appellant:
        Specialty Retailers, Inc.

**Edward C. Abell, Jr.**
**Craig A. Ryan**
**Emily Breaux**
**The Onebane Law Firm**
**Post Office Box 3507**
**Lafayette, Louisiana  70502-3507**
**(337) 237-2660**
**Counsel for Defendants/Appellees:**
> **RB River IV LLC**
> **RB River V LLC**
> **RB River VI LLC**

**Michael P. Bienvenu**
**Kinchen, Walker, Bienvenu,**
**Bargas, Reed & Helm, L.L.C.**
**9456 Jefferson Highway, Building III, Suite F**
**Baton Rouge, Louisiana  70809**
**(225) 292-6704**
**Counsel for Defendant/Appellee:**
> **Stirling Properties, LLC**

**KEATY, Judge.**

Plaintiff, a commercial tenant, filed suit against its landlord and the property manager to recover rent it allegedly overpaid. The tenant and the landlord filed cross-motions for summary judgment concerning interpretation of the "Additional Rent" provision in the lease between them. The trial court denied the tenant's motion for partial summary judgment and granted summary judgment in favor of the landlord, dismissing the tenant's claims against it. The tenant appeals, and for the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. Plaintiff, Specialty Retailers, Inc. (SRI or the tenant), entered into a ten-year Lease Contract (the lease) with Weingarten Realty Investors (WRI) in February 2003, regarding a portion of a retail shopping center in Lafayette, Louisiana. Thereafter, SRI began operating a Stage department store in the leased premises. In May 2005, WRI transferred its interest in the shopping center to RB River IV LLC, RB River V LLC, and RB River VI LLC (collectively RBR or landlord). The lease called for SRI to pay three types of rent: Minimum Rent,[1] Percentage Rent,[2] and Additional Rent. In simple terms, the Additional Rent portion of the lease required SRI to make monthly payments to cover its proportionate share of the costs and expenses paid by the landlord. The lease provided for a year-end reconciliation of the monthly amounts paid by SRI against the actual amount that the landlord incurred in costs and expenses during that calendar year.

---

[1] The Minimum Rent was a fixed amount arrived at by multiplying a set price per square foot by the amount of square footage leased by SRI.

[2] The Percentage Rent obligated SRI to pay a percentage of its gross sales in excess of a specified breakpoint amount.

SRI hired third-party auditor Green Back Cost Recovery (Green Back) in 2014 to review the lease. Green Back concluded that SRI had been paying more than it owed in Additional Rent based upon its interpretation of a cap provision found in the lease. Thereafter, SRI sent several demand letters in accordance with the Louisiana Open Account Law[3] to Stirling Properties, L.L.C. (Stirling), property manager of the shopping center, seeking a refund of the amounts it had allegedly overpaid. When its demands went unanswered, SRI filed suit against RBR and Stirling (hereafter collectively referred to as Defendants), alleging that they were guilty of breach of contract and/or that they were liable to it on open account and seeking damages of $213,529.39.

After Defendants answered the suit, SRI filed a motion for partial summary judgment seeking to have the trial court declare as a matter of law that Section 22.01(E) of the lease capped the "actual CATI[4] payments" owed by it to RBR. In response, RBR filed a motion for summary judgment asserting that the lease obligated SRI to "pay its proportionate share of all Common Area Operating Costs, Taxes and Insurance Premiums incurred on an annual basis and that Section 22.01(E) simply limit[ed] the monthly payment obligations against those annual costs." Stirling filed a memorandum in support of RBR's motion and against that filed by SRI. Following a hearing, the trial court denied SRI's motion for partial summary judgment and granted summary judgment in favor of RBR, dismissing SRI's claims against it. SRI timely appealed the ensuing judgment and is now before this court assigning these errors:

> 1. In deciding that the annual cap on Tenant's Share of CATI only applied to *estimated* monthly payments, the district court

---

[3] *See* La.R.S. 9:2781.

.

[4] In the commercial lease context, "CATI" is an acronym for Common Area Operating Costs, Taxes, and Insurance Premiums.

erroneously interpreted the clear and unambiguous language of Section 22.01(E) of the Lease Contract, which expressly provides that Tenant's Share of *actual* CATI may not increase by more than four percent (4%) each year.

2. The district court's erroneous interpretation of the Lease Contract renders Section 22.01(E) meaningless because, without an annual cap on Tenant's share of *actual* CATI, the additional rent would be unpredictable and the reconciliation process found in Section 22.02 would be unnecessary.

3. To the extent the district court found the Lease Contract to be ambiguous, the district court erroneously failed to consider that the undisputed facts establish the intent of the original parties to the Lease Contract to provide for an annual cap on *actual* CATI (as evidenced by similar contracts between SRI and WRI).

## DISCUSSION

### *Standard of Review*

"Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). On de novo review, "there is no deference to the trial judge's legal findings, and we make an independent review of the evidence in determining whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966." *Bridges v. Cepolk Corp.*, 13-1051, p. 10 (La.App. 3 Cir. 2/12/14), 153 So.3d 1137, 1145, *writ denied*, 14-901 (La. 8/25/14), 147 So.3d 1117. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko*, 94 So.3d at 755.

3

According to La.Code Civ.P. art. 966(D)(1):

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In *Bridges*, 153 So.3d at 1145, this court noted that "[b]ecause this case involves cross-motions for summary judgment, our task is to determine whether either party has established that there are no genuine issues of material fact and whether either party is entitled to judgment as a matter of law."

## *Interpretation of Leases*

Louisiana Civil Code Article 2668, titled "Contract of Lease defined," provides that lease is a "contract by which one party, the lessor, binds himself to give the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." In *Van Mol v. Beasley*, 15-869 (La.App. 3 Cir. 2/3/16), 184 So.3d 280, this court was tasked with reviewing a judgment rendered based upon a trial court's interpretation of a lease between a landlord and a tenant. Therein, we noted:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.,* 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims,* 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans,* 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further

4

interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763.

*Prejean v. Guillory,* 10-740, pp. 6-7 (La.7/2/10), 38 So.3d 274, 279.

To determine the meaning of words used in a contract, a court should give them their generally prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. A provision susceptible of different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Furthermore, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[5]

*St. Mary Operating Co. v. Guidry,* 06-1495, p. 6 (La.App. 3 Cir. 4/4/07), 954 So.2d 397, 402, *writ denied,* 07-962 (La.6/29/07), 959 So.2d 520, *quoting Claitor v. Delahoussaye,* 02-1632 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, *writ denied,* 03-1820 (La.10/17/03), 855 So.2d 764 (internal citations omitted).

*Van Mol*, 184 So.3d at 284.

This court has further held:

When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is a proper procedural vehicle to present the question to the court. . . .

However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact. In this posture, the granting of a summary judgment is appropriate only if "there is no genuine issue as to material fact . . ."

___

[5] *See* La.Civ.Code art. 2050.

*LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc.*, 16-71, p. 7 (La.App. 3 Cir. 8/17/16), 200 So.3d 939, 946 (*quoting Carter v. BRMAP,* 591 So.2d 1184, 1188 (La.App. 1 Cir. 1991)), *writ denied,* 16-1684 (La. 11/29/16), 210 So.3d 804.

### *The Lease*

SRI's first two assignments of error focus on Section 22.01(E) of the lease. It claims that the "clear and unambiguous language" of that particular provision placed a cap on the "actual CATI" that it owed per year and that any other interpretation would render Section 22.01(E) meaningless. RBR counters that SRI's argument is flawed because it fails to consider the lease as written and in its entirety. RBR submits that Section 22.01(E) caps SRI's monthly CATI payments which can "only be estimated because they are paid monthly in advance." RBR contends that its interpretation of Section 22.01(E), which the trial court accepted, is correct given the yearly reconciliation provision found in Section 22.02 of the lease which compares SRI's actual share of CATI to the monthly payments that SRI previously paid and which does not reference a cap.

The Additional Rent provision is found in Article XXII of the lease, which begins as follows:

> Section 22.01. Commencing on the first day of the Lease Term and continuing for the balance of the Lease Term, in addition to and separate from the Minimum Rent and Percentage Rent, Tenant shall pay to Landlord as additional rent the Tenant's Share of Common Area Operating Costs, Taxes and Insurance Premiums (as such terms are hereinafter defined).

The lease then provides (emphasis added):

> A. The phrase "**Common Area Operating Costs**" shall mean, for each calendar year (or portion thereof) during the term of this Lease, the aggregate of all costs, expenses and liabilities of every kind or nature paid or incurred by the Landlord (to the extent that Landlord, in its good faith judgment, regards it as appropriate to provide . . . [).]
>
> . . . .

6

D. The phrase "**Tenant's Share**" as applied to Common Area Operating Costs, Taxes and Insurance Premiums shall refer to a sum calculated by multiplying the Common Area Operating Costs, Taxes and Insurance Premiums (as the case may be) by a fraction, the numerator of which is the floor area (in square feet) of the Leased Premises, . . . and the denominator of which is the aggregate leasable floor area (in square feet) of all buildings in the Shopping Center. . . .

E. Tenant shall pay to Landlord one-twelfth (1/12) of Tenant's Share of Common Area Operating Costs, Taxes and Insurance Premiums (hereinafter collectively referred to as "**CATI**"), monthly in advance, for each and every month during the term of this Lease every month during the term of this Lease. . . . Notwithstanding the foregoing, in calendar years 2003 and 2004, respectively Tenant's Share of CATI shall not exceed $5,416.67 per month (the "**CATI Payment**"). . . . After the expiration of calendar year 2004, the CATI Payment may increase by no more than four percent (4%) per calendar year (compounded annually); provided however, that the CATI Payment may never exceed one-twelfth (1/12) of Tenant's Share of CATI during the applicable calendar year.

After explaining the meaning of the terms used therein, the lease gives the Landlord the right to "to estimate Tenant's Share of CATI," subject to a year-end reconciliation whereby the "the **actual amount** of Tenant's Share of CATI" is compared to "the aggregate amount previously paid by Tenant" that year (emphasis added). Thereafter, SRI would owe any shortfall to RBR within twenty days. On the other hand, any overpayment made by SRI would be either credited to its "next ensuing installment of CATI due" or refunded by RBR.[6]

---

[6] See Section 22.02 of the lease which provides:

> Subject to Section 22.01(E) above, Landlord shall have the right, exercisable by Landlord giving notice to Tenant from time to time during the term of this Lease (but not more often than twice in any one [1] calendar year), to estimate Tenant's Share of CATI for the relevant calendar year indicated by Landlord, whereupon, commencing on the date designated by Landlord and continuing for the balance of the period during the term of this Lease indicated by Landlord, Tenant shall pay Landlord on the first day of each month, monthly in advance, one-twelfth (1/12th) of the amount so estimated by Landlord.

> Subject to Section 22.01(E) above, at the end of each calendar year occurring during the term of this Lease (and subsequent to the expiration or other termination of this Lease if such occurs on a date other than the last day of a calendar year), Landlord will give Tenant notice of the total amount paid by "Tenant" for the relevant calendar year accompanied by reasonable information

7

We conclude that the language of the lease at issue herein clearly and unambiguously requires SRI to pay to RBR, on a yearly basis, its actual share of the Common Area Operating Costs incurred by RBR, without reference to any cap. SRI's arguments to the contrary are flawed. The result sought by SRI confuses the terms CATI and Tenant's Share, and it fails to consider and give meaning to the entire Additional Rent section of the contract. Moreover, SRI's fear that the Additional Rent provision of the lease could serve as a "potential profit center" for RBR is unjustified given the lease's inclusion of a mechanism to substantiate the amount of Additional Rent that RBR seeks to collect from it. SRI's first and second assignments of error lack merit. Because we have found no ambiguity in the lease between SRI and RBR, we do not reach SRI's third assigned error. We conclude that the trial court did not err in granting summary judgment in favor of RBR.

## DECREE

For the foregoing reasons, the trial court judgment is affirmed. All costs of this proceeding are assessed against Plaintiff/Appellant, Specialty Retailers, Inc.

**AFFIRMED.**

---

necessary to substantiate the amount thereof together with the actual amount of Tenant's Share of CATI for such calendar year. If the actual amount of Tenant's Share of CATI with respect to such period exceeds the aggregate amount previously paid by Tenant with respect thereto during such period, Tenant shall pay to Landlord the deficiency within twenty (20) days following notice from Landlord; however, if the aggregate amount previously paid by Tenant with respect thereto exceeds Tenant's Share of CATI for such period, then, at Landlord's election, such surplus (net of any amounts then owing by Tenant to Landlord) shall be credited against the next ensuing installment of CATI due hereunder by Tenant, or Landlord may refund such net surplus to Tenant. At the end of the term of this Lease, Landlord shall refund any surplus to Tenant within thirty (30) days.